# LIGGETT & MYERS TOBACCO COMPANY *v.* UNITED STATES.

## CERTIORARI TO THE COURT OF CLAIMS.

No. 362. Argued March 3, 1927.—Decided May 2, 1927.

1. A continuing order for naval supplies made during the late war by direction of the President, under Acts of March 4 and June 15, 1917, examined and *held* to be not an offer to purchase but a command, acceptance of which " subject to conditions " specified, did

---

not make a contract; therefore, the property delivered under it was taken by eminent domain.　P. 220.

2. For property not paid for when taken, just compensation includes the value at that time, with enough more, measurable by interest, to produce the equivalent of full value paid at the taking.　*Id.*

61 Ct. Cls. 693, reversed.

CERTIORARI to a judgment of the Court of Claims allowing a recovery less than the petitioner's claim, for tobacco products furnished the Government during the war.

*Mr. Chester A. Gwinn,* with whom *Mr. Adrian C. Humphreys* was on the brief, for petitioner.

The owner is not limited to the value of the property at the time of the taking but is entitled to such addition as will produce the full equivalent of that value paid contemporaneously with the taking.　Interest at a proper rate is a good measure by which to ascertain the amount so to be added.　*Seaboard A. L. Ry.* v. *United States,* 261 U. S. 299; *Brooks-Scanlon Corp.* v. *United States,* 265 U. S. 106; *United States* v. *Benedict,* 261 U. S. 294; *United States* v. *Rogers,* 255 U. S. 163.

Petitioner's property was taken by the United States through the exercise of its right of eminent domain. *American Smelting & Ref. Co.* v. *United States,* 259 U. S. 75; *Atlantic Ref. Co.* v. *United States,* 59 Ct. Cls. 108; *Seaboard A. L. Ry.* v. *United States, supra; Brooks-Scanlon Corp.* v. *United States, supra.*

Since Congress has no power to limit the right to just compensation guaranteed by the Fifth Amendment, § 177 of the Judicial Code does not apply to this case.　*Brooks-Scanlon Corp.* v. *United States, supra; United States* v. *Benedict, supra; Seaboard A. L. Ry.* v. *United States, supra; Monongahela Nav. Co.* v. *United States,* 148 U. S. 312; *United States* v. *New York,* 160 U. S. 598; *Plymouth Coal Co.* v. *Pennsylvania,* 232 U. S. 531.

*Assistant Attorney General Galloway,* with whom *Solicitor General Mitchell* was on the brief, for the United States.

The question presented is whether under the circumstances of this case there was a taking or requisition under the power of eminent domain, or a voluntary sale under contract. It must be conceded that the question is not settled by the decision in the case of *American Smelting Co.* v. *United States,* 259 U. S. 75. In that case the order for merchandise did not state that compliance with it was obligatory, and made no reference to statutes authorizing the United States to requisition property, as did the naval order in the present case. The order in that case also specified a price for the copper, and the Smelting Company not only agreed to deliver it as specified in the order, but agreed to the price fixed. The view that in the present case there was no requisition or taking under the power of eminent domain rests on the contention that where an "obligatory" order or requisition is issued under a statute authorizing the exercise of the power of eminent domain, the property owner to whom it is directed may not voluntarily deliver the property in obedience to the order, but must require the United States to come and take it, and that if he does indicate an "acceptance" or willingness to comply with the order, except as to the price suggested, and thereafter voluntarily delivers the merchandise to the United States, he has made a contract which limits him to the value as of the date of delivery without interest thereon to the date of payment, whereas if he had stood fast and refused to comply with the order in any particular, and required the government to send and seize his property, he would place himself in the better position of being entitled, in addition to the value as of the date of the taking, to interest thereon to the date of payment.

The conclusion reached by the Court of Claims is not so obviously correct as to remove the question from the

field of reasonable debate. The question is one of importance affecting constitutional rights of citizens. Other cases involving the same problem are pending.

*Messrs. Ira Jewell Williams, John H. Stone,* and *F. R. Foraker* filed a brief as *amici curiae,* by special leave of Court.

MR. JUSTICE BUTLER delivered the opinion of the Court.

Plaintiff brought this action to recover a balance claimed for tobacco products obtained from it for the Navy and Marine Corps between September 8, and November 23, 1918. The Court of Claims found the value to be $483,504.30 and that in the same period the United States paid on account $423,893.96, and gave judgment for the difference, $59,610.34, without more. The plaintiff contends that the products were taken under the power of eminent domain and that it is entitled to such additional sum as will produce the equivalent of their value paid at the time of the taking; and that interest at a reasonable rate is the measure of the amount required to be added in order to make just compensation.

The sole question is whether the facts found constitute a taking by eminent domain. Plaintiff was engaged in the manufacture and sale of tobacco products. August 26, 1918, the Bureau of Supplies and Accounts of the Navy issued and delivered to it Navy order N-4128, stating that pursuant to the Act of March 4, 1917 (39 Stat. 1168, 1193) and the Act of June 15, 1917 (40 Stat. 182) and under the direction of the President an order thereby was placed to furnish specified tobacco products for which provisional prices were named; that compliance was obligatory; that no commercial orders should be allowed to interfere with the delivery called for; that, as it was impracticable then to " determine a reasonable and just compensation for the material to be delivered, the fixing of the price will be sub-

ject to later determination. You are assured of a reasonable profit under this order; and as an advance payment you will be paid the unit prices stated hereon, with the understanding that such advance payment will not be considered as having any bearing upon the price to be subsequently fixed. Any difference between the amount of such advance payment and the amount finally determined upon as being just and reasonable will be paid to you or refunded by you, as the case may be." The document stated that the order must be accepted and filled in any event; that it was to be signed and returned by plaintiff; that deliveries were to be made as directed by a designated officer and bills sent to him bearing a certificate that the prices were those stated in the order; and that the conditions appearing on the reverse side of the order were made a part of it. These included printed portions of the above-mentioned Acts of Congress empowering the President in time of war to place an order with any person for war material, of a kind and quantity being produced by him, as the necessities of the Government might require; declaring that " compliance with all such orders shall be obligatory," and that, whenever the United States shall requisition any war material " it shall make just compensation therefor "; and authorizing the President to exercise this power through agencies to be determined by him. September 9, 1918, the Paymaster General of the Navy directed that any orders issued by the Quartermaster General of the Marine Corps should be executed and billed at the prices specified in order N-4128. And, October 14 and November 22 following, the order was further modified so as to call for additional tobacco products. Upon receipt of the order and each of the modifications plaintiff signed a statement thereon that it was " accepted subject to the conditions " specified. The President had authorized the Secretary of the Navy, either directly or through any officer who, acting under the Secretary, had

authority to make contracts on behalf of the Government, to exercise all the power and authority vested in the President applicable to the production, purchase and requisitioning of war material.

Navy order N-4128 did not purport to be an offer to purchase; it commanded delivery of specified merchandise. Plaintiff's consent was not sought; it was not consulted as to quantity, price, time or place of delivery. The Navy relied upon the compulsory provisions of the Acts of Congress and commanded compliance with the order. These Acts authorized the requisition of plaintiff's property for public use. The President was empowered to take immediate possession of its plant to manufacture the tobacco products called for. Act of June 3, 1916, 39 Stat. 166, 213. And it is to be presumed that the plant would have been taken if plaintiff had refused compliance. The acceptance was not the closing of a contract; it was the expression of purpose to obey. And the order was a continuing one and operated to require delivery of the specified articles whether then on hand or thereafter to be produced.

The findings show that plaintiff's property was taken by eminent domain; and its just compensation includes the additional amount claimed. *Seaboard Air Line Ry.* v. *United States,* 261 U. S. 299, 304; *Brooks-Scanlon Corp.* v. *United States,* 265 U. S. 106, 123.

*Judgment reversed.*