Williams, Judge,
delivered the opinion:
The plaintiff, a New Jersey corporation, was, prior to the entrance of the United States into the World War in April, 1917, the owner of certain water-front property at Hoboken, New Jersey, in the port of New York. This property consisted of three piers with the slips adjacent thereto and upland at the shore end of the piers with certain buildings and improvements thereon. All the capital stock of the plaintiff was owned by the Hamburg-American Line, a German corporation.
*365 Shortly after the entrance of the United States into the War this property was seized by the Government and until June 28, 1918, was used by it for the loading, unloading, and storage of cargo and supplies, and for the embarkation and debarkation of troops. On the latter date, the Alien Property Custodian having before that time seized all the capital stock of the plaintiff corporation under the provisions of the trading-with-the-enemy act, formal title to the property was taken by the United States. Thereafter just compensation was awarded to the plaintiff for the fee title of its properties, in the sum of $2,314,877, which amount was paid on January 5, 1919, and is in no way involved in this suit.
Plaintiff, in this suit, seeks to recover compensation for the use of the property, from the date it was seized by the United States in April, 1917, to June 28, 1918, the period prior to the taking of title thereto.
The defendant concedes the taking of the plaintiff’s property, and its use by the United States. It also concedes that the plaintiff is entitled to compensation for the reasonable rental value of the property for the period of its use. The controversy between the parties, therefore, does not relate to the plaintiff’s right to recover, but involves only the amount it is entitled to receive.[1]
Three questions are involved in the determination of the amount plaintiff is entitled to recover:
(1) What was the date on which the Government took possession of the property?
(2) What is the reasonable rental value of the property during the period of its use?
(3) Is the plaintiff entitled to interest on the value of the use of its piers, from June 28, 1918, as a part of the compensation to be awarded?
The plaintiff contends its property was seized by the Government on April 6, 1917, while the defendant contends the property was taken on April 17, 1917. We have found the Government took possession of the property on April 17, as claimed by the defendant. That was the date on which *366 General John M. Carson, depot quartermaster at New York, delivered to the plaintiff’s officers a letter notifying them of the taking over of the properties, at which time he also delivered to them a copy of the order of the Secretary of War, directing such action. The plaintiff is, therefore, entitled to compensation from that date to June 28, 1918.
The plaintiff claims in its petition, and in its brief, that the fair rental value of its property was $2,400 per day, while the defendant contends the rental value was only $918.83 per day. It is not deemed necessary to review in detail, in this opinion, the testimony offered by the respective parties on this point. The question involved is wholly one of fact, and we have found that the reasonable rental value of the property was $966.86 per day, or $422,517.82 for the entire period of its use by the Government.
The plaintiff’s claim that it is entitled to an additional amount, measured by interest on the rental value of the property, as a part of the compensation awarded to it, presents a question of law.
The property was taken and used by the Government under the act of August 29, 1916 (c. 418, 39 Stat. 619, 645):
“The President, in time of war, is empowered, through the Secretary of War, to take possession and assume control of any system or systems of transportation, or any part thereof, and to utilize the same, to the exclusion as far as may be necessary of all other traffic thereon, for the transfer or transportation of troops, war material and equipment, or for such other purposes connected with the emergency as may be needful or desirable.”
The defendant contends that this is not a “just compensation” statute, and points out that no reference to the matter of compensation, or provision for the payment of compensation, is made in the act. It is urged, therefore, that plaintiff’s right to recover is under the general law, as upon an implied contract, to pay for the rental value of the property as of the date of its use, and that section 177 of the Judicial Code bars the recovery of interest as an element of compensation.
The plaintiff’s right to just compensation for the tailing and use of its property arises under the guaranty of the Fifth Amendment that private property shall not be taken *367 for public use without just compensation, and is not dependent on the provisions of the statute under which it was taken. Seaboard Air Line Ry. v. United States, 261 U. S. 299. The compensation to which the plaintiff is entitled is the full and perfect equivalent of the property taken. This is not limited to the value of the property at the time of the tailing, but includes such an additional amount as will produce the full equivalent of that value paid contemporaneously with the taking. Interest at a proper rate is a good measure by which to ascertain the amount to be added. Seaboard Air Line Ry. v. United States, supra; Liggett & Myers Tobacco Company v. United States, 274 U. S. 215; Phelps v. United States, 274 U. S. 341.
In Phelps v. United States, supra, the Secretary of War pursuant to the act of August 29, 1916, and the act of August 10, 1917 (Sec. 10, c. 53, 40 Stat. 276, 279), took possession of certain pier properties in New York Harbor belonging to the Bush Terminal, on which Phelps Bros. & Company owned a lease. The Government continued to use and occupy the property until after the termination of the war. The court said:
“Under the fifth amendment plaintiffs were entitled to just compensation; and, within the meaning of section 145 [Judicial Code], the claim is one founded on the Constitution. Moreover, it has long been established that where, pursuant to an act of Congress, private property is taken for public use by officers or agents of the United States, the Government is under an implied obligation to make just compensation. That implication being consistent with the constitutional duty of the Government as well as with common justice, the owner’s claim is one arising out of implied contract. * * * Judgment in 1926 for the value of the use of the property in 1918 and 1919, without more, is not sufficient to constitute just compensation. Section 177 [Judicial Code] does not prohibit the inclusion of the additional amount for which petitioner contends. It is not a claim for interest within the purpose or intention of that section. Acts of Congress are to be construed and applied in harmony with and not to thwart the purpose of the Constitution. The Government’s obligation is to put the owners in as good position pecuniarily as if the use of their property had not been taken. They are entitled to have the full equivalent of the value of such use at the time of the tailing paid contemporaneously with the tailing.”
*368 The facts -in the Phelps case and the case at bar are the same except that in the Phelps case the property was taken pursuant to both the act of August 29, 1916, and the act of August 10, 1917, commonly known as the Lever Act. The Lever Act contained a provision for just compensation for property taken, while the act of August 29, 1916, did not contain such a provision. This distinction is not material. An owner’s right to just compensation for property taken pursuant to an act of Congress is grounded on the constitutional guaranty and not on the statute. The right to just compensation is neither given, nor can it be taken away by statute. Seaboard Air Line Ry. v. United States, supra.
The plaintiff is entitled to the additional amount claimed. Judgment is awarded the plaintiff in the sum of $422,517.82, with interest thereon, from June 29,1918, until paid as a part of just compensation. It is so ordered.
Whaley, Judge; Littleton, Judge; Green, Judge; and Booth, Chief Justice, concur.

 The petition in this case was, on February 8,1924, dismissed by the court on the defend* ant’s demurrer. (59 O. Cis. 461.) This decision was reversed by the Supreme Court, 277 ü. S. 138. The court said:
“The petition in No. 3 [the case at bar] states a good cause of action for the use of the docks and piers from April 0,1917, to June 28,1918.”