**UNITED STATES of America, Plaintiff-Appellant,**

v.

**57.09 ACRES OF LAND, MORE OR LESS, SITUATE IN SKAMANIA COUNTY, STATE OF WASHINGTON, and Ray E. Zeigler, et al., Defendants-Appellees.**

No. 84–3611.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 5, 1985.

Decided April 9, 1985.

---

Maria A. Iizuka, Washington, D.C., for plaintiff-appellant.

James J. Mason, Tacoma, Wash., for defendants-appellees.

Before FARRIS, ALARCON, and FERGUSON, Circuit Judges.

FARRIS, Circuit Judge:

## FACTS

On May 25, 1975, appellee Peterson obtained a rock quarry lease from Bruce Starker. The lease was to expire on December 31, 1979, and it contained no renewal clause or provision. The lease also permitted Peterson to use an existing road to haul rock from the quarry.

Apparently, this access road was not adequate for Peterson's use. In December 1975, he obtained a road easement over property owned by Ray Ziegler. The Starker property that Peterson leased was separated from the Ziegler property by a parcel of state land. In April 1976, the State of Washington issued Peterson a road use permit that was to expire on February 1, 1977. Peterson then constructed a road connecting his quarry to the Ziegler road easement, which was completed in July, 1976.

On March 25, 1976, the United States filed a condemnation complaint to acquire part of the Ziegler property over which Peterson's road easement ran. The property was needed to relocate a road and railroad tracks in connection with the construction of a powerhouse for the Bonneville Lock and Dam project. On April 1, 1976, the district court authorized the government to take possession of the condemned property. In September, 1977, the government filed a declaration of taking and revoked Peterson's permission to use the road.

Peterson was compensated for the value of his condemned easement. He also sought severance damages for the reduction in value of the leased quarry served by the condemned easement. The district court granted the government summary judgment on this issue, holding that Peterson could not receive severance damages because he was not the feeholder of the condemned property. We reversed that decision. 706 F.2d 280.

A jury trial was held on the issue of severance damages to Peterson's leasehold quarry. At pre-trial, the government re-

quested that the trial court make a number of decisions limiting the issue before the jury to the precise question of just compensation. Specifically, the government asserted that in determining the value of the lease, all evidence of income derived from the project must be excluded and it could not be assumed that the lease would be extended beyond its term. The trial court refused these requests.

Assuming that the lease would be renewed, Peterson's appraisal expert, Sandstrom, testified that it was worth $45,250. He also testified that Peterson's business losses were $118,000. Based upon this testimony, the jury awarded Peterson $163,-000. The government appeals and presents the following issues for our review.

Whether Sandstrom's valuation testimony was improper because it: (1) was based on averages of production from pre- and post-taking periods; (2) assumed that the condemned access road was the only one to the quarry when there were two others; (3) assumed an extension of the lease; and (4) was based upon income generated by the government project?

Did the district court improperly allow the jury to determine if the government's taking was within the original scope of the project? The government also suggests that the scope of the project doctrine is inapplicable because most of the quarry's income was from the government project, which cannot be considered in determining just compensation.

Was the award that Peterson received for business losses noncompensable?

We reverse in part and remand.

DISCUSSION

■ The standard of review for questions of law is *de novo*. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). Review of questions concerning admissibility of evidence in a federal condemnation proceeding is under an abuse of discretion standard. *United States v. 55.22 Acres of Land*, 411 F.2d 432, 434 (9th Cir.1969).

■ ▪ Initially, Peterson asserts that the government waived its rights to appeal the issues presented because it failed to object to jury instructions and testimony on these issues. While the government made no specific objection to testimony and jury instructions, it did not waive its rights to appeal at least two issues. When the court decided, at a pre-trial hearing, to allow the jury to hear evidence of income derived from the project and to assume that the lease would be renewed, the government specifically objected to that decision. The court was, therefore, aware of the government's objection. The language used by the court in noting the objection rendered any further objections superfluous. Additional objections at trial were, therefore, not necessary to preserve the government's right to appeal these issues. *See Loya v. Desert Sands Unified School District*, 721 F.2d 279, 282 (9th Cir.1983); *Brown v. Avemco Investment Corp.*, 603 F.2d 1367, 1371–74 (9th Cir.1979); *see also Fay v. Walston & Co.*, 493 F.2d 1036, 1047 (7th Cir.1974) (although party failed to object at time of instructions, court reviewed alleged errors because "all of them were specifically pointed out to the trial court in connection with" previous discussions).

*Sandstrom's use of average production figures and his assumption that the government took the only access to Peterson's quarry were not improper*

Sandstrom based his appraisal of Peterson's lease on the capitalization of income method. The rock production figure that he used to calculate income from the quarry was an average of actual pre- and post-taking production figures from the quarry. The government contends that this was improper because the property should be valued at the time of taking. The government also attacks Sandstrom's assumption that there was no other adequate access to the quarry. Assuming *arguendo* that the government properly objected on these issues, we find its arguments unpersuasive.

■ In condemnation cases, we favor an expansive rule on the consideration of evi-

dence, "the only condition being that ... willing vendees and vendors would deem such evidence or information relevant in their negotiations." *Winston v. United States,* 342 F.2d 715, 724 (9th Cir.1965). A jury can properly consider evidence of value within a reasonable period of time before and after the taking. *State of Washington v. United States,* 214 F.2d 33, 47 (9th Cir.), *cert. denied,* 348 U.S. 862, 75 S.Ct. 86, 99 L.Ed. 679 (1954); *see also United States v. 100 Acres of Land,* 468 F.2d 1261, 1267–68 (9th Cir.1972) (because government had opportunity to cross-examine on the issue of possible future uses of the condemned property, admission of evidence on this issue was not error), *cert. denied,* 414 U.S. 864, 94 S.Ct. 37, 38 L.Ed.2d 84 (1973).

 In the present case, projected production figures would be relevant to any prospective purchaser of Peterson's lease. The opportunity to cross-examine and the use of closing arguments were sufficient to cure any defect with the testimony regarding the number of access roads to the quarry. Sandstrom's use of average figures and his assumptions about access were not reversible error.

*Sandstrom improperly calculated the value of the lease based upon an extension of that lease*

 When the government condemns a leasehold interest, it must pay compensation for the value of the lease, as well as the value of any renewal rights found in the lease. *See United States v. Petty Motor Co.,* 327 U.S. 372, 381, 66 S.Ct. 596, 601, 90 L.Ed. 729 (1946). In the absence of a renewal clause, however, expectations of renewal are not a compensable item. *Id.* at 380 n. 9, 66 S.Ct. at 601 n. 9. Peterson's quarry lease did not contain a renewal clause and he should therefore have received compensation only for the remaining term of his lease.

Sandstrom testified that Peterson's annual lease advantage was $12,650. The value of the remaining 2⅓ years on Peterson's lease, undiscounted to present value,

would have been $29,474. Sandstrom capitalized the annual lease advantage at a value of $45,250. This capitalization was based on the useful life of Peterson's quarry equipment, which assumed that the lease would be extended.

The Supreme Court has created a narrow exception to the rule disallowing valuations based upon mere expectations of renewal. In *Almota Farmers Elevator & Warehouse Co. v. United States,* 409 U.S. 470, 476, 93 S.Ct. 791, 795, 35 L.Ed.2d 1 (1973), the tenant had built grain elevators on the condemned leasehold property. The Court held that a tenant who put fixtures on leasehold property should be compensated for the reasonable life of the fixtures and not merely for the remainder of the lease. There are no allegations that Peterson's equipment consisted of fixtures and the government asserts that it was all removable. Moreover, unlike *Almota,* the government in this case did not take the leasehold. For these reasons, the allowance of Sandstrom's calculations of value based upon an extension of the lease was erroneous.

 Furthermore, because Peterson's equipment did not consist of fixtures, consideration of its value was irrelevant to the question of just compensation for Peterson's leasehold interest. That evidence was not relevant to any proper issue in the case. The trial court's admission of evidence on the cost of idle equipment and the value of Peterson's equipment and rolling stock was, therefore, an abuse of discretion.

*The jury should not have been allowed to consider the value of the quarry based upon the income obtained from the government project*

 The government contends that Peterson bought into the project; Peterson knew of it and took a risk that is noncompensable. Peterson asserts that he obtained the quarry lease to replace a previously exhausted quarry and thus did not "buy into" the project. Regardless of Peterson's motivations, the income he re-

ceived from the government project may not be considered in determining the value of his lease.

We have liberally applied the principle, articulated in *United States v. Cors*, 337 U.S. 325, 333, 69 S.Ct. 1086, 1091, 93 L.Ed. 1392 (1949), that "excludes enhancement of value resulting from the government's special or extraordinary demand for the property." *United States v. Weyerhaeuser Co.*, 538 F.2d 1363, 1366 (9th Cir.), *cert. denied*, 429 U.S. 929, 97 S.Ct. 336, 50 L.Ed.2d 300 (1976). In *Weyerhaeuser*, the government condemned a company road that it had previously used to haul lumber. The company demanded that the value of the road be determined by reference to the income it had derived from the use fees paid by the government. Citing *Cors*, we refused to allow consideration of that income. *Id.*

Even more significant is a Fourth Circuit case, *United States v. Whitehurst*, 337 F.2d 765, 772 (4th Cir.1964), cited by the *Weyerhaeuser* panel with approval. In that case, the owner of a truck farm next to a naval air station had been selling sand from a sand pit on his property to the station for the construction of runways. Part of Whitehurst's property, including his sand pit, was subsequently condemned to accommodate base expansion. The court refused to allow valuation based upon the income derived from the sand pit, holding that *"the requirements of the Government for the project for which the land is taken must be totally excluded."* *Id.* (emphasis in original).

Peterson acknowledged throughout the litigation that most of his business came from the government project. *Weyerhaeuser* and *Whitehurst* indicate that regardless of Peterson's knowledge or intentions, value based upon income from the government project is not compensable. Sandstrom's estimates of value were therefore improper for failing to disallow this item of income.

As the government correctly notes, adherence to this rule will render the scope of the project doctrine inapplicable. Any in-crease in the value of Peterson's lease was largely due to the income from the government project. Because this is an impermissible consideration in determining just compensation, any increase in value cannot be considered regardless of the scope of the project doctrine. *See Whitehurst*, 337 F.2d at 772.

We do not decide whether the award Peterson received for his business losses was noncompensable, because the government did not properly object to the jury's consideration of this issue. On remand, however, we suggest that the district court "distinguish between appropriation of property and the frustration of an enterprize [sic]." *PVM Redwood Co., Inc. v. United States*, 686 F.2d 1327, 1329 (9th Cir.1982) (quoting *United States v. Grand River Dam Authority*, 363 U.S. 229, 236, 80 S.Ct. 1134, 1138, 4 L.Ed.2d 1186 (1960)), *cert. denied*, 459 U.S. 1106, 103 S.Ct. 731, 74 L.Ed.2d 955 (1983). The jury awarded $163,000 based upon Sandstrom's testimony that Peterson's rock crushing operation was worth $118,000. This is evidence of a business loss, which, under federal condemnation law, is noncompensable. *See United States v. Petty Motor Co.*, 327 U.S. 372, 377–78, 66 S.Ct. 596, 599–600, 90 L.Ed. 729 (1946); *Mitchell v. United States*, 267 U.S. 341, 345, 45 S.Ct. 293, 294, 69 L.Ed. 644 (1925); *Omnia Commercial Co., Inc. v. United States*, 261 U.S. 502, 504, 43 S.Ct. 437, 67 L.Ed. 773 (1923); *PVM Redwood*, 686 F.2d at 1329.

We reverse in part and remand for further consideration on the question of severance damages.