**THIBODO v. UNITED STATES.**

No. 12371.

United States Court of Appeals
Ninth Circuit.

Feb. 15, 1951.

Rehearing Denied March 7, 1951.

George W. Crouch, Los Angeles, Cal., for appellant.

A. Devitt Vanech, Asst. Atty. Gen., Ernest A. Tolin, U. S. Atty., Los Angeles, Cal., Roger P. Marquis, Wilma C. Martin, Dept. of Justice, Washington, D. C., for appellee.

Before STEPHENS, BONE and ORR, Circuit Judges.

STEPHENS, Circuit Judge.

The plaintiff Thibodo is here appealing from a judgment dismissing his complaint without leave to plead further. On August 24, 1931, the Treasurer of the City of National City, California, apparently in conformity with state law, issued to appellant certain street improvement bonds. The

bonds in suit according to law provided that they be paid in ten annual installments beginning January 2, 1932, and constituted liens on the lands in suit. Appellant has continued to own and does now own these bonds and no payment of principal or interest has ever been paid thereon.

On or about February 9, 1943, the United States brought an action in the District Court for the Southern District of California to condemn land, including the land in suit, and thereupon filed a Declaration of Taking and the court made its order of possession in pursuance thereof. Title 40, U.S.C.A. § 258a.

Appellant was not made a party to the above action, and was not served with summons.

On November 23, 1948, appellant filed this action in the district court, asking for judgment against the United States in the amount of the principal and interest on the bonds and that it be decreed that each bond constitute a lien upon the property described therein until the due amounts are paid. It is alleged in the complaint that the total of the amounts involved is less that $10,000, bringing the action within the terms of Section 1346(2), Title 28 U.S.C.A.

In granting the government's motion to dismiss the action the district court ruled as follows:

"I. That plaintiff herein, although a proper, was not a necessary party to the condemnation proceedings affecting the real property which is the subject matter of the instant action, and which was involved in case No. 172–SD Civil, entitled 'United States of America v. 107.28 Acres of Land in the City of San Diego, etc. et al.,' and there was no necessity for the United States to serve plaintiff herein or to make him a party-defendant in the aforesaid condemnation proceeding; and that, accordingly, plaintiff herein was not entitled to be heard in the matter of the determination of just compensation for the condemnation and taking of the real property in said condemnation proceeding.

"II. That the bond register maintained in the office of the County Treasurer, as provided for by the Public Improvement Act of 1911, and acts amendatory thereof, and the California Street and Highway Code, Section 6400, et seq., is not such a public record as constitutes either actual or constructive notice to the United States of America of the existence of the claims of this complainant arising out of the ownership of Public Improvement Street Lien Bonds.

"III. That the Complaint herein does not state facts sufficient to constitute a cause of action against the United States of America. * * *"

Plaintiff does not contend that the taking was wrong or tortious, but does claim that the Government took his interest in the property for public use without just compensation and thereby violated the Fifth Amendment to the Constitution of the United States, and that such taking gave rise to an implied contract with the United States to pay therefor.

We look to the cases to determine whether on this state of the record the complaint lacks substance.

In Jacobs v. United States, 1933, 290 U.S. 13, 16, 54 S.Ct. 26, 78 L.Ed. 142, petitioners brought suits to recover just compensation for property taken by the United States for public use in the exercise of the power of eminent domain. The Supreme Court there stated that the right to recover just compensation for property taken for public use by the United States in the exercise of its power of eminent domain gave rise to an implied promise to pay, based upon the duty imposed by the Fifth Amendment to the Constitution of the United States.

An action based upon an implied promise to pay for the taking of private property for public purposes comes within Title 28 U.S.C.A. § 1346(2), which allows suits against the sovereign on contracts "express or implied". The Constitution requires that the owner be compensated in the amount of the loss caused by the appropriation of a valuable property interest. Bauman v. Ross, 1897, 167 U.S. 548, 17 S. Ct. 966, 42 L.Ed. 270; Phelps v. United States, 1927, 274 U.S. 341, 47 S.Ct. 611, 71 L.Ed. 1083; see United States v. Sponenbarger, 1939, 308 U.S. 256, 60 S.Ct. 225, 84

L.Ed. 230; United States v. Great Falls Mfg. Co., 112 U.S. 645, 5 S.Ct. 306, 28 L. Ed. 846.

Similar questions to those raised in the case before us were involved in Mullen Benevolent Corp. v. United States, 1933, 290 U.S. 89, 95, 54 S.Ct. 38, 78 L.Ed. 192, where an action was brought to recover the balance due on improvement district bonds issued by a village for sidewalk and sewer construction. The United States had acquired the land for construction of a reservoir under the authority of an act of Congress, and had caused to be paid all assessments against the land which had been levied up to the taking. Later, the city reassessed all of the lands within the districts. As the land was then owned by the United States, the assessment was a nullity.

The theory of petitioner, holder of the securities in the Mullen case, was that the bonds were property and were taken by the respondent, and in the alternative, that they were liens, actual or inchoate, on the realty, and as the lien could not be foreclosed against lands owned by the United States, the acquisition of the lots by the United States destroyed the value of the securities and gave rise to an implied promise to pay the sums remaining due to the bondholders. The municipality, under the local law, was not liable on the bonds, and its only duty was to collect the assessments against the lands upon which the bonds were liens and place them in a separate fund set apart for payment of principal and interest. In fulfillment of this obligation the city could bring suit to recover out of each lot the amount of the assessment against it, and if the municipality failed or neglected to collect, the bondholder could proceed to do so in his own name, and could foreclose the lien of the assessment. The plan appears to be similar, though there are important differences between them, to that under which the bonds in suit were issued.

The Supreme Court held that the United States did not take or destroy any lien belonging to the claimant, since " * * * None remained upon the land, when the purchases were consummated. * * *" By purchase of the lands the United States had " * * * at most frustrated action by the city to replenish the assessment fund to which alone the bondholder must look for payment of his bonds. * * *"[1] Passing the thought that perhaps a more realistic and less technical view of the government's duty to compensate for property taken would be justified, we move on to distinguish our case from the one cited.

The Supreme Court in that case did not have before it the question as to whether the United States would have been held responsible had the lien been upon the land for the full sum of the bonds when it was taken by the government,[2] as is the case in this appeal as may be seen by reference to the California Improvement Act of 1911, Cal. Stats., 1911, p. 730, as amended. The text is in 3 Deering's General Laws of California, 1931, p. 4519, et seq. We digest it in footnote 3.

It is clear from the terms of the bonds involved in this case that they represent the cost of work which has been assessed

1. Mullen Benevolent Corp. v. United States, 1933, 290 U.S. 89, quoting from page 95, 54 S.Ct. 38, at page 41, 78 L. Ed. 192.

2. Consult Drake v. City of St. Paul, 8 Cir., 1933, 65 F.2d 119; United States v. Certain Lands in Borough of Brooklyn, 2 Cir., 1942, 129 F.2d 577; Phillips v. United States, 7 Cir., 1945, 151 F.2d 645; Board of Directors of Red River Levee Dist. No. 1 of Lafayette County, Arkansas v. Reconstruction Finance Corp., 8 Cir., 1948, 170 F.2d 430; Stubbs v. United States, D.C.N.C.1938, 21 F. Supp. 1007; United States v. Certain Parcels of Land, D.C.Cal.1942, 44 F.

Supp. 936; United States v. Aho et al., D.C.Or.1944, 68 F.Supp. 358.

3. The Act is divided into four parts. In Part I, after providing for the making of the improvements, it is stated that the expenses incurred for work authorized by the Act should be assessed upon the lots and lands fronting thereon, each lot being assessed proportionately, with exceptions which do not concern us here. After the contractor has fulfilled his contract for the improvements, the street superintendent or the city engineer is to make an assessment to cover the sum due for the work performed and specified in the contract. The assessment is

against the land and which remains unpaid. Until paid, the bond provides that the amount, with accrued interest is a lien upon the property. According to the California Supreme Court, the bond itself represents the lien upon the land after it has been issued. Balaam v. Pacific States Savings and Loan Company, 1933, 219 Cal. 612, 28

to refer to the contract, the work contracted for and performed, the amount to be paid for the work, the amount of each assessment against each lot or portion of a lot, the number of each lot or portion or portions of a lot so assessed, and is to have attached a diagram showing where the work has been done. The assessment is then required to be filed with the city clerk.

The clerk is then to give notice of the filing of the assessment and of a time when all persons interested in the work done or in the assessment will be heard by the city council.

When the council is satisfied with the correctness of the assessment, it is to confirm the proceedings and the assessment, and the street superintendent is to attach a warrant to the assessment. The warrant empowers the contractor, or his agents or assigns, to demand and receive the assessments, according to the diagram attached.

Section 23 provides: "Said warrant, diagram and assessment, shall be recorded in the office of said superintendent of streets. When so recorded the several amounts assessed shall be a lien upon the lands, lots, or portion of lots assessed, respectively, and such lien shall so continue until it be discharged of record. Such lien shall be subordinate to all special assessment liens previously imposed upon the same property, but it shall have priority over all special assessment liens which may thereafter be created against the said property; and *from and after the date of said recording of any warrant, assessment and diagram, all persons shall be deemed to have notice of the contents thereof. * * *"* [Emphasis ours.]

The contractor may make demand upon the owner for the payment of the amount and all payments must be reported to the street superintendent who is to indicate the payment in the record. The superintendent of streets is authorized to receive the amount due upon any assessment and warrant issued by him provided a bond has not been issued to represent the assessment. Within a specified period after recording of the assessment, the contractor may sue the owner of the land and recover the amount of any assessment remaining unpaid with interest and penalties allowed. The provisions allowing the contractor

this remedy against the owner are expressly inapplicable to assessments represented by the issuance of bonds.

The Act also has provision for reassessments.

Section 37 provides: "The superintendent of streets shall keep a public office in some convenient place within the municipality, and such records as may be required by the provisions of this act. The records so kept and signed by him, shall have the same force and effect as other public records, and copies therefrom duly certified, may be used in evidence with the same effect as the originals. The said records shall, during all office hours, be open to the inspection of any person wishing to examine them, free of charge."

Part II of the Act deals with the procedure to be followed for change of grade and does not concern us here.

Part III of the Act deals with the issuance of bonds. It is provided that the city council of any municipality shall have the power to determine that serial bonds shall be issued in the manner and form provided, to represent assessments for the cost of improvements authorized in Part I of the Act.

Section 60 provides, inter alia: " * * * Said bonds and interest thereon shall be paid at the office of the city treasurer of said municipality, who shall keep a fund designated by the name of said bonds, into which he shall place all sums paid him for the principal of said bonds and the interest thereon, together with all penalties thereon, and from which he shall disburse such sums, upon the presentation of said coupons; and under no circumstances shall said bonds or the interest thereon be paid out of any other fund. *Said city treasurer shall keep a register in his office, which shall show the series, number, date, amount, rate of interest, payee and indorsees of each bond, and the number and amount of each coupon of principal or interest paid by him and shall cancel and file each coupon so paid. * * *"* [Emphasis ours.]

The owner or person interested in any land upon which a bond has been issued may at any time before commencement of proceedings for sale thereof, pay off such bond and discharge the land from the lien of the assessment by paying to the city treasurer for the holder of the

P.2d 1053; Thompson v. Clark, 1936, 6 Cal. 2d 285, 57 P.2d 490.

Upon default in payment, two remedies are open to the bondholder under the Act: He may make a demand in writing upon the city treasurer to sell the land or he may himself proceed to file and maintain a suit to foreclose the lien and recover the amount due thereon.

Both of the above doors to recovery on his bonds were closed to the plaintiff when the United States exercised its power over the land in 1943. Mullen Benevolent Corp. v. United States, supra.[4]

We direct our attention first to the holding of the trial court that the records required by the Act did not charge the government with notice of plaintiff's interest. As may be seen in footnote 3, Section 23 provides that the warrant, diagram and assessment shall be recorded in the office of the superintendent of streets, and after recordation, " * * * all persons shall be deemed to have notice of the contents thereof * * *," and that under Section 37 the records so kept by the street superintendent are to have the same force and effect as other public records.

Where bonds have been issued, the Act calls for two sets of records; the record of the street assessments to be kept in the office of the street superintendent, under Part I of the Act, and a record of the bonds issued to represent such assessments, kept in the office of the city treasurer, in conformity with Sections 60 and 66 of Part III of the Act.

In Thompson v. Clark, supra, the California Supreme Court held that the provisions of the Improvement Act of 1911 must be

bond, the amount then unpaid on the principle sum with interest and penalties. Upon such payment being made to the city treasurer, he is to report it to the street superintendent, who shall mark paid on the margin of the record of the assessment which was represented by the bond. Thereupon the lien of the assessment is to cease and the city treasurer is to notify the bondholder and call in the bond. The city treasurer is to enter in his record of the bond the amount paid and the date of payment, and upon the lien of the assessment being extinguished, is to cancel the bond and file it in his office.

Section 63 provides the approved form of the bond. By its terms each bond represents the amount assessed against a lot or parcel of land, which, at the time the bond is issued, remains unpaid. Until paid, the amount is a lien upon the property affected thereby. The bond is payable exclusively out of the designated fund and neither the municipality nor any officer thereof is, by its terms, to incur liability thereby. Upon default in payment of the bond, the holder is entitled to declare the whole unpaid amount to be due and payable, and to have the lot or parcel sold in conformity with law.

Section 66 requires the city treasurer. to keep a record of the bonds issued and other matters pertaining thereto.

Section 67 provides that when payment on the bonds has not been made when due, after a demand in writing by the holder upon the city treasurer to sell the land, the land may be sold for nonpayment.

In this event, the city treasurer must enter in a book kept in his office for that purpose, the date, number, and series of the bond and the details of the sale. This book must be open to public inspection during office hours. Prior to the date that municipal taxes are due, the city treasurer is to certify to the tax collector a list of the properties upon which payment has not been made when due upon any bond issued under Part III of the Act, so that this may be indicated on the tax bill.

It is also provided that in the event of nonpayment of the bonds, by way of a separate, distinct and cumulative remedy, the holder may maintain a suit to foreclose the lien of the bond and recover the amount due, after waiting the required time. The court is given power in such action, to cause the premises to be sold to discharge the lien thereon.

Part IV of the Act deals with definitions of terms and with other matters with which we are not here concerned.

4. The amendments to the California Civil Code, § 2911, and to the California Code of Civil Procedure, § 330, shortening the time within which the bondholder could satisfy his lien were enacted in 1945. We express no opinion as to whether these amendments apply to plaintiff's bonds. See Jeffreys v. Point Richmond Canal & Land Co., 1927, 202 Cal. 290, 260 P. 548.

construed together, and that where bonds have been issued, the lien referred to in Section 66 is a continuation of the lien declared in Section 23. The court stated that the lien under Section 23 continues until it be discharged of record, that is, where bonds have issued, until the bond is paid in full and the record of the assessment marked paid by the superintendent of streets.

The California cases indicate that once the assessment has been recorded in a proper book it operates to give constructive notice of its contents. Federal Construction Co. v. Curd, 1918, 179 Cal. 479, 177 P. 473. Where bonds have been issued, the holder of the bond becomes a lienholder of record. Castle v. Schulman, 1948, 32 Cal.2d 222, 195 P.2d 781. See McCabe v. Grey, 1862, 20 Cal. 509.

■ We hold that the lien here involved is a subject of public record, charging a subsequent condemnor with constructive notice thereof. Armed with this knowledge, the amount of the lien could have been withheld for its rightful claimant.[5]

5. Title 40 U.S.C.A. § 258: "The practice, pleadings, forms and modes of proceedings in causes arising under the provisions of section 257 of this title shall conform, as near as may be, to the practice, pleadings, forms and proceedings existing at the time in like causes in the courts of record of the State within which such district court is held, any rule of the court to the contrary notwithstanding."

Title 40 U.S.C.A. § 258a: "In any proceeding in any court of the United States outside of the District of Columbia which has been or may be instituted by and in the name of and under the authority of the United States for the acquisition of any land or easement or right of way in land for the public use, the petitioner may file in the cause, with the petition or at any time before judgment, a declaration of taking signed by the authority empowered by law to acquire the lands described in the petition, declaring that said lands are thereby taken for the use of the United States. Said declaration of taking shall contain or have annexed thereto—

"(1) A statement of the authority under which and the public use for which said lands are taken.

"(2) A description of the lands taken sufficient for the identification thereof.

"(3) A statement of the estate or interest in said lands taken for said public use.

"(4) A plan showing the lands taken.

"(5) A statement of the sum of money estimated by said acquiring authority to be just compensation for the land taken.

"Upon the filing said declaration of taking and of the deposit in the court, to the use of the persons entitled thereto, of the amount of the estimated compensation stated in said declaration, title to the said lands in fee simple absolute, or such less estate or interest therein as is specified in said declaration, shall vest in the United States of America, and said lands shall be deemed to be condemned and taken for the use of the United States, and *the right to just compensation for the same shall vest in the persons entitled thereto;* and said compensation shall be ascertained and awarded in said proceeding and established by judgment therein, and the said judgment shall include, as part of the just compensation awarded, interest at the rate of 6 per centum per annum on the amount finally awarded as the value of the property as of the date of taking, from said date to the date of payment; but interest shall not be allowed on so much thereof as shall have been paid into the court. No sum so paid into the court shall be charged with commissions or poundage.

"Upon the application of the parties in interest, the court may order that the money deposited in the court, or any part thereof, be paid forthwith for or on account of the just compensation to be awarded in said proceeding. If the compensation finally awarded in respect of said lands, or any parcel thereof, shall exceed the amount of the money so received by any person entitled, the court shall enter judgment against the United States for the amount of the deficiency.

"Upon the filing of a declaration of taking, the court shall have power to fix the time within which and the terms upon which the parties in possession shall be required to surrender possession to the petitioner. *The court shall have power to make such orders in respect of encumbrances, liens, rents, taxes, assessments, insurance, and other charges, if any, as shall be just and equitable.*" [Emphasis ours.]

Federal Rules of Civil Procedure, rule 81(7), Title 28 U.S.C.A.: "In proceedings for condemnation of property un-

Just what was done in this regard the pleadings do not reveal.

Since many western states, with their scores of municipalities, make use of similar plans in providing for a means of payment for improvements,[6] it is not an unreasonable burden to require the condemnor with knowledge of a lien to make inquiry into the records of such matters, where it is clear that such a public record is required to be maintained. This is a normal part of the process of determining the proper parties to whom the award is to be paid.

The holding of the trial court to the effect that *the record* did not impart actual or constructive notice to the condemnor leaves unanswered the question of whether the condemnor had actual notice of the appellant's interest. The trial on the merits or the complaint upon amendment may reveal this important circumstance.

We turn to a consideration of the holding of the trial court that the plaintiff was a proper, but not a necessary party to the condemnation proceedings.

■ Under the California law, a lienholder has a present proprietary interest in the subject matter of land sought to be taken by eminent domain proceedings which confers a right to have such interest considered and determined in said action. City of Vallejo v. Superior Court, 1926, 199 Cal. 408, 249 P. 1084, 48 A.L.R. 610; Calif. Code Civ.Proc. (1949) §§ 1244, subd. 2, 1246, 1246.1, 1248. See Harrington v. Superior Court, 1924, 194 Cal. 185, 228 P. 15.

Section 1248, subd. 8, of the California Code of Civil Procedure provides that if the amount of a lien is not due at the time of entry of the judgment, the amount may be deducted from the judgment, with the lien continuing until the indebtedness is paid. This section is held applicable to street improvement liens. City of Los Angeles v. Superior Court, 1934, 2 Cal.2d 138, 39 P.2d 401. If the lien is due and overdue, the security holder is entitled to have the money awarded in the condemnation proceedings applied to the payment of his claim. City of Vallejo v. Superior Court, supra. The very purpose of the statute is to prevent a situation wherein the condemnor will pay the full value of the land, and thereafter will be forced to pay again to holders of liens on the land. City of Los Angeles v. Superior Court, supra.

While it is true that the above cases seem to imply that the lienholder is not a necessary party to the proceedings, they leave no doubt of the fact that his interest must be protected in some practical manner.

■ It is well established, however, that one seeking relief for the deprivation of constitutional rights must first exhaust his remedies in the state court. Phyle v. Duffy, 1948, 334 U.S. 431, 68 S.Ct. 1131, 92 L.Ed. 1494.

■ The California courts recognize the doctrine that when land is taken for public use, the money awarded for such land remains, and is to be considered as, representing the land in respect to all rights and in-

---

der the power of eminent domain, these rules govern appeals but are not otherwise applicable."

California Code of Civil Procedure (1949), Section 1248 provides: "The court, jury, or referee must hear such legal testimony as may be offered by any of the parties to the proceedings, and thereupon must ascertain and assess:

"1. The value of the property sought to be condemned, and all improvements thereon pertaining to the realty, and of each and every separate estate or interest therein; if it consists of different parcels, the value of each parcel and each estate or interest therein shall be separately assessed; * * *.

"8. *If property is mortgaged.* When

the property sought to be taken is encumbered by a mortgage or other lien, and the indebtedness secured thereby is not due at the time of the entry of the judgment, the amount of such indebtedness may be, at the option of the plaintiff, deducted from the judgment, and the lien of the mortgage or other lien shall be continued until such indebtedness is paid."

6. See 1 Arizona Code, ann. (1939) § 16–2315 et seq.; 9 Idaho Code, ann. (1948) § 50–2901 et seq.; 1 Revised Codes of Montana, ann. (1947) § 11–2229 et seq.; 8 Oregon Compiled Laws, ann. (1940) § 125–620 et seq.; 10 Remington's Revised Statutes of Washington, ann. (1933) § 9262 et seq.

terests relating thereto. The money is applied to discharge the liens upon the land in accordance with the rights of encumbrances in respect to the land. Los Angeles Trust & Savings Bank v. Bortenstein, 1920, 47 Cal.App. 421, 190 P. 850.[7] The lien claimant may follow the fund in order to subject it to his claim even if it has been paid out to others. Rose v. Conlin, 1921, 52 Cal.App. 225, 198 P. 653.

█ Plaintiff should be given the opportunity to amend his complaint to show that he has exhausted the state remedy or that this relief is not available to him, or that pursuit for relief through the state courts would be fruitless. When appellant has taken proper steps as just suggested he may then state his claim for relief based upon a deprivation of constitutional rights, by virtue of the "taking" of his right to have his bonds discharged through foreclosure of the lien upon the land.

Plaintiff's claim for relief is based upon the alleged violation of the Fifth Amendment to the United States Constitution. The Supreme Court has stated that " * * * where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief. And it is also well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done. * * *" Bell v. Hood, 1946, 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939.

The Government stresses its own assertion that plaintiff knew of the proceeding and therefore is estopped by laches from recovering in this action, but we find no admission of such fact in the pleadings. It may be that in the necessitous haste to get possession and title to the land in suit for navy use during the great war that the lienholder was overlooked and if so, he should not be deprived of his day in court to show, if he can, that the Government's action nullified his statutory right to enforce his claim, thereby depriving him of his constitutional right under the Fifth Amendment to the Constitution of the United States.

The judgment on the motion to dismiss is reversed and the case is remanded.

Reversed and remanded.

7. See Reed Orchard Co. v. Superior Court, 1912, 19 Cal.App. 648, 128 P. 9, 18; Pomona College v. Dunn, 1935, 7 Cal. App.2d 227, 46 P.2d 270; Weber v. Wells, 9 Cir., 1946, 154 F.2d 1004; United States Fidelity & Guaranty Co. 

v. City of Asheville, N. C., 4 Cir., 1936, 85 F.2d 966; United States v. Certain Parcels of Land in City of San Diego, San Diego County et al., D.C.Cal.1942, 44 F.Supp. 936.