**UNITED STATES of America, Plaintiff,**

**v.**

**Louis MALPESO, Jr., Defendant.**

**No. 96 CR 170 (JBW).**

United States District Court, E.D. New York.

Oct. 23, 1996.

Zachary Carter, United States Attorney by Andrew Weissman, David James, Rebecca Berg (Law Student Intern), Brooklyn, New York, for U.S.

Margaret E. Alverson, New York City, for Defendant.

WEINSTEIN, Senior District Judge:

## TABLE OF CONTENTS

I. FACTS ................................................................ 256
II. GENERAL STATUTORY AND SENTENCING GUIDELINE REQUIRE-
 MENTS .......................................................... 256
III. PRISON ............................................................ 257

IV. RESTITUTION ..................................................257
V. FINE ..........................................................259
VI. COST OF IMPRISONMENT ..........................................260
VII. SPECIAL ASSESSMENT ............................................260
VIII. SUPERVISED RELEASE ...........................................260
IX. CONCLUSION ...................................................260

For the reasons set out below, defendant, who pled guilty to one count of extortionate collection of credit, 18 U.S.C. § 894, is sentenced to 27 months in prison, a $50 assessment, and a fine in the amount of $10,000. While the issue appears to be a novel one, the court also has the power to order restitution to the Federal Bureau of Investigation (F.B.I.) for the cost of relocating the victim and his family. Payment of $19,016.14 for this purpose is ordered.

## I. FACTS

In 1995, defendant loaned John Burnham $100,000 in cash. The money was supplied by a consortium for which defendant acted. Burnham agreed to pay back that sum and an usurious interest payment of $3,000.00 per week—a rate of 156% per annum.

To force Burnham to pay, defendant not only threatened extreme violence, including murder, but struck Burnham. When Burnham fell further behind on payments, defendant (while somewhat inebriated) threatened to kill his wife and children. The victim and his family fled. Defendant hired a private investigator to track them down. Finally, Burnham sought help from the F.B.I. which recorded some of defendant's threats. Burnham and his family were relocated by the F.B.I. at an actual and reasonable cost of $19,016.14.

At the sentencing hearing defendant's ill wife testified. Defendant is a good husband and father to his infant and three year old daughter. He and his wife share a home with an equity of about $50,000. This is almost their sole asset. Defendant is promised a job by a prospective employer who appeared at sentencing.

## II. GENERAL STATUTORY AND SENTENCING GUIDELINES REQUIREMENTS

Section 3553 of Title 18 of the United States Code details the factors the court must consider at sentencing. Exercising "traditional sentencing discretion," *Koon v. United States,* — U.S. —, —, 116 S.Ct. 2035, 2046, 135 L.Ed.2d 392 (1996), it must "impose a sentence sufficient, but not greater than necessary, to comply with purposes set forth" in the statutes. 18 U.S.C. § 3553(a). These purposes include deterrence, just punishment, incapacitation, rehabilitation, and restitution. The court

> shall consider— ...
>
> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; [and] ...
>
> (7) the need to provide restitution to any victims of the offense.

*Id.* Other relevant factors and purposes include the nature of the offense, the history and characteristics of the defendant, the kinds and ranges of sentences available under the applicable Sentencing Guidelines, policy statements of the Sentencing Commission, and the desirability for relative uniformity in sentencing. 28 U.S.C. § 3553(a)(1), (3)–(6). *See United States v. Ferranti,* 928 F.Supp. 206, 213 (E.D.N.Y.1996); *United States v. Concepcion,* 795 F.Supp. 1262, 1271 (E.D.N.Y.1992) (the Sentencing Guidelines do not obviate the court's sentencing burden with respect to the statutory directives under 18 U.S.C. § 3553(a)), *disapproved on other grounds, United States v. DeRiggi,* 45 F.3d 713 (2d Cir.1995).

## III. PRISON

Sentencing for extortion is controlled by Sentencing Guideline section 2E2.1, providing a base offense level of 20. Adjusting for acceptance of responsibility, three levels are subtracted, leaving a total offense level of 17. The defendant's criminal history places him in criminal history category II, resulting in a range for imprisonment of 27 to 33 months.

■ Defendant seeks a downward departure pursuant to Guideline section 5K2.0 on account of the extreme family hardship which would be occasioned by his absence from the home. *See* U.S.S.G. § 5H1.6. Incarceration has had, and will continue to have, a particularly deleterious effect upon his wife and young children. The three year old shows signs of emotional distress. Unable to find competent, affordable full-time day care for the children, defendant's wife has not been able to obtain employment. The family is already encountering financial difficulties.

■ Family hardship imposed by defendant's absence can be considered by the sentencing court which is "reluctant to wreak extraordinary destruction on dependents...." *United States v. Londono*, 76 F.3d 33, 36 (2d Cir.1996); *see also, United States v. Johnson*, 964 F.2d 124, 128–129 (2d Cir.1992) (extraordinary family circumstances are a valid reason for a downward departure).

The seriousness of the offense and the need for general and specific deterrence and for incapacitation here overrides the compassionate factors. Defendant's conduct related to his offense involved violence. He liberally resorted to extravagant and graphic threats to extract payments from the victim.

Defendant is sentenced to 27 months, which is within the Guidelines range.

## IV. RESTITUTION

One of the purposes of sentencing is to provide restitution to victims of the offense. 18 U.S.C. § 3553(a)(7). Restitution has gained wide approval in recent years. The obligation to consider restitutory needs within the context of the criminal sentencing process has increased. *See e.g.,* Victim and Witness Protection Act of 1982, Pub.L. 97–291, 1982 U.S.Code Cong. & Admin.News 2515 ("the Act"); *United States v. Ferranti,* 928 F.Supp. 206, 217–219, 220–221 (E.D.N.Y. 1996) (discussing in detail the role and value of pecuniary penalties in the French system, the history of restitution, and its increasing acceptance in the United States); *see also* U.S.S.G. § 5E1.1(a) ("The court *shall*—(1) enter a restitution order if such an order is authorized under 18 U.S.C. §§ 3663–3664 ...") (emphasis added).

■ Section 3663 of the Act gives the court broad discretion in fashioning a restitution order. *United States v. Ferranti,* 928 F.Supp. 206, 221 (E.D.N.Y.1996); *United States v. Grundhoefer,* 916 F.2d 788, 793 (2d Cir.1990); *United States v. Casamento,* 887 F.2d 1141, 1177 (2d Cir.1989), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990). For example, in the case of an offense involving bodily injury, a court may order payment for medical expenses, including psychological treatment and other costs related to the healing process, and, where death results, reimbursement for funeral and related services. 18 U.S.C. § 3663(b)(2), (3). The defendant may be required to "reimburse the victim for lost income and necessary child care, transportation, and other expenses related to the participation in the investigation or prosecution of the offense ..." *Id.* § 3663(b)(4).

■ Restitution to "any" victim is authorized. 18 U.S.C. § 3663(a)(1); *United States v. Grundhoefer,* 916 F.2d 788, 794 (2d Cir. 1990). The word "victim" is interpreted broadly. *See, e.g., United States v. Durham,* 755 F.2d 511, 512–13 (6th Cir.1985); *United States v. Ferranti,* 928 F.Supp. 206, 224 (E.D.N.Y.1996) (restitution to insurance underwriters). A government entity can be a victim. *See e.g., United States v. Ferranti,* 928 F.Supp. at 224 (E.D.N.Y.1996) (restitution to New York Fire Department); *United States v. Helmsley,* 941 F.2d 71, 101 (2d Cir.1991) (restitution to the I.R.S. and the State of New York), *cert. denied,* 502 U.S. 1091, 112 S.Ct. 1162, 117 L.Ed.2d 409 (1992); *United States v. Sunrhodes,* 831 F.2d 1537 (10th Cir.1987) (restitution to the Indian Health Service).

■ Where the costs to the victim have been advanced by a third party, that party can be reimbursed for the advances. *See United States v. Ferranti,* 928 F.Supp. 206, 224 (E.D.N.Y.1996) (advance of the New York City Fire Department to the widow of a fireman killed in an arson case and insurance payments to the owner of a building damaged by the arson were reimbursed pursuant to 18 U.S.C. § 3664(e)(1)).

■ Before ordering restitution, the court must take into account (1) the amount of loss sustained by the victim as a result of the offense, (2) the financial resources available to the defendant, (3) the financial needs and earning ability of the defendant and his or her dependents, and (4) any other factors the court deems appropriate. 18 U.S.C. § 3664(a). It need not set forth its findings in detail, but the record must reflect its consideration of these statutorily mandated factors. *United States v. Tortora,* 994 F.2d 79, 81 (2d Cir.1993); *see also United States v. Roy William Harris,* 79 F.3d 223 (2d Cir. 1996) (court must consider the financial needs of defendant and his dependents before ordering payment of restitution), *cert. denied,* —— U.S. ——, 117 S.Ct. 142, 136 L.Ed.2d 89 (1996); *United States v. Mortimer,* 52 F.3d 429, 436 (2d Cir.) (an affirmative act or statement on the part of the court demonstrating its consideration of the defendant's ability to pay is necessary), *cert. denied,* —— U.S. ——, 116 S.Ct. 208, 133 L.Ed.2d 141 (1995).

■ Future earning capacity may be considered if the defendant is presently incapable of paying. *United States v. Mortimer,* 52 F.3d 429, 436 (2d Cir.) ("Even an indigent defendant may be subject to the duty to pay restitution when and if funds are eventually acquired"), *cert. denied,* —— U.S. ——, 116 S.Ct. 208, 133 L.Ed.2d 141 (1995); *United States v. Atkinson,* 788 F.2d 900, 904 (2d Cir.1986); *United States v. Brown,* 744 F.2d 905, 911 (2d Cir.) (citing 18 U.S.C. § 3663(f)(2)(B); "recognizing that indigency may be temporary, Congress provided for payment of restitution during a period of up to five years after the completion of any prison sentence imposed"), *cert. denied,* 469 U.S. 1089, 105 S.Ct. 599, 83 L.Ed.2d 708 (1984); *but see Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983) (constitutional objections may be encountered if restitution order is enforced at a time when the defendant is unable, through no fault of his own, to comply).

■ The F.B.I.'s decision to relocate Burnham and family was a direct and necessary response to defendant's specific conduct, particularly the threats that others would pursue Burnham and his family if defendant were arrested. Were it not for defendant's credible threats, there would have been no need for the Burnhams to move and the cost of relocation would not have been incurred.

Under subsection 3663(b)(4), a restitution order "may require that such defendant— . . . in any case, reimburse the victim for lost income and necessary child care, transportation, and other expenses related to participation in the investigation or prosecution of the offense or attendance at the proceedings related to the offense." 18 U.S.C. § 3663(b)(4). Burnham and his family had to relocate during the investigation and prosecution of the offense, and the F.B.I.'s payment constitutes an advance of this expense.

Congress enacted 3663(e)(1) in order to address situations where third parties have assumed costs by stepping into the breach to compensate a victim for a loss. As it noted,

> [t]ypically, sentences in both federal and state courts are less likely to require restitution if the victim was insured. The common practice of not permitting insurance companies to be subrogated to the rights of insured victims means that some offenders are being relieved of their debts. It also means that insurance companies and the insurance-buying public are being asked to pay off the offender's debt.

S.Rep. No. 532, 97th Cong., 2d Sess. 31, *reprinted in* 1982 U.S.Code Cong. & Admin.News 2515, 2537 ("Senate Report").

In advancing funds for witness protection, the F.B.I. is in the same position as an insurer. The fact that Burnham did not himself sustain the loss of $19,016.14 is of no consequence. For, undoubtedly, had the F.B.I. not assumed the cost of relocation and

incurred that loss, Burnham would have had to do so.

*United States v. Sunrhodes*, 831 F.2d 1537 (10th Cir.1987), is analogous. In that case, the court affirmed an order requiring that the defendant pay $6,260.75 in restitution to the Indian Health Service Division of the Department of Health and Human Services ("I.H.S.") for the cost of medical treatment provided the Native American victim of the defendant's shooting. As was standard practice, the I.H.S. directly reimbursed the medical practitioners who had performed necessary surgery even though the victim had never requested that the I.H.S. pay. The costs were a direct result of the injury the victim sustained at defendant's hands. *Id.* at 1539–40. Citing the Act and its legislative history, the court held that "there was no error in ordering restitution to the Indian Health Service. The loss occurred as a result of the defendant's offense and restitution is proper under the terms of the statute." *Id.* at 1546.

The premise of section 3663 "is that the court in devising just sanctions for adjudicated offenders, should insure that the wrongdoer make [good], to the degree possible, the harm he has caused his victim." *See* Senate Report 97–532, 97th Cong. 2nd Sess. 30, U.S.Code Cong. & Admin.News 1982, at 2536. Defendant's actions resulted in significant cost to the F.B.I. By compensating the F.B.I., defendant "make[s good]" on the harm he caused the victim as well as his protector, the F.B.I.

This result is not inconsistent with the refusal to award restitution for the cost of investigation and prosecution of cases. *See, e.g., Gall v. United States*, 21 F.3d 107, 111 (6th Cir.1994) ("drug buy" money advanced by the government is not recoverable); *United States v. Daddato*, 996 F.2d 903, 905 (7th Cir.1993) (same); *United States v. Salcedo–Lopez*, 907 F.2d 97, 98 (9th Cir.1990) (money used by undercover government agent to purchase false identification documents is not recoverable); *United States v. Finley*, 783 F.Supp. 1123, 1127 (N.D.Ill.1991) (no restitution of funds extorted by defendant from undercover agent). In these cases, the government sought restitution for costs it in-

curred "in the clandestine provocation of a crime." *United States v. Gibbens*, 25 F.3d 28, 32 (1st Cir.1994). The money was spent as part of the investigatory process to obtain evidence. *Id.* at 33 ("investigatory costs do not constitute a 'loss' within the purview of the Act because such costs are best conceived as voluntary outlays for the procurement of evidence").

The F.B.I.'s expenditure in relocating the Burnhams does have a connection to that agency's interest in procurement of evidence. Yet, it is inappropriate to characterize it simply as "bait to catch offenders." *United States v. Daddato*, 996 F.2d 903, 905 (7th Cir.1993) (repayment for purchase price of hallucinogenic mushrooms not restitution, but a form of "community service"). Protection of the lives of the Burnhams was of independent and paramount concern to law enforcement both before and after defendant's apprehension. The expenditure was not "voluntary." Defendant's actions and threats forced the government's hand, compelling it to relocate Burnham as a prophylactic measure.

Unlike the cases denying compensation for government costs of investigation, the instant case presents a situation in which the expenditure was a "loss caused by the specific conduct that is the basis of the offense of the conviction." *Hughey v. United States*, 495 U.S. 411, 413, 110 S.Ct. 1979, 1981, 109 L.Ed.2d 408 (1990). That the government had some degree of interest in the evidentiary fruit of its expenditure does not make it any less a loss with the meaning of the Act.

## V. FINE

In addition to section 3553's required sentencing considerations, the factors enumerated in 18 U.S.C. § 3572 that must be evaluated when imposing a fine include:

(1) the defendant's income, earning capacity, and financial resources;

(2) the burden that the fine will impose upon the defendant, any person financially dependent on the defendant, or any other

person (including the government) that would be responsible for the welfare of any person financially dependent on the defendant, relative the burden that alternative punishments would impose;

(3) any pecuniary loss inflicted upon others as a result of the offense;

(4) whether restitution is ordered or made and the amount of such restitution;

(5) the need to deprive the defendant of illegally obtained gains from the offense; [and]

(6) the expected costs to the government of any imprisonment, supervised release, or probation component of the sentence;

. . .

18 U.S.C. § 3572(a)(1)–(6).

 In sum, a court must impose a fine in all cases, except where the defendant establishes that a fine cannot be paid presently or in the future. U.S.S.G. § 5E1.2(a). The defendant carries the burden of demonstrating that a fine should not be imposed due to his financial inability to pay. *United States v. Marquez*, 941 F.2d 60, 65 (2d Cir.1991). Moreover, the court "is not required to accept a defendant's unsubstantiated claim of penury, and it is entitled to reject such a claim when he has refused to cooperate with the Probation Department in exploring his financial resources." *United States v. Sasso*, 59 F.3d 341, 352 (2d Cir.1995).

 Under the Sentencing Guidelines, the fine range is $5,000 to $50,000. U.S.S.G. § 5E1.2(c)(3). Considering all of defendant's circumstances and the need for just punishment, a fine in the amount of $10,000, within the Guidelines, is imposed. A greater fine cannot be supported by the record as within defendant's present or prospective capacity to pay.

## VI. COST OF IMPRISONMENT

 Defendant has not been completely forthcoming about his outstanding loans, but the evidence demonstrates that they are not significant. Defendant was a collector, not a principal. *Compare United States v. Sasso*, 59 F.3d 341, 352 (2d Cir.1995); *United States v. Ferranti*, 928 F.Supp. 206, 220 (E.D.N.Y. 1996); *United States v. Sessa*, 821 F.Supp.

870, 875 (E.D.N.Y.1993), *aff'd*, 41 F.3d 1501 (2d Cir.1994). In the present case the *Fatico* hearing, *see United States v. Fatico*, 458 F.Supp. 388 (E.D.N.Y.1978), *aff'd*, 603 F.2d 1053 (2d Cir.1979), *cert. denied*, 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980), established that defendant had sufficient assets to pay the restitution and the fine imposed, *supra* sections IV and V, while leaving modest assets just sufficient to support his wife and children while he is incarcerated. In view of his wife's illness and the need to support their young children, payment for the cost of imprisonment cannot be supported by any current or prospective assets. *See* U.S.S.G. § 5E1.2(i); *cf. United States v. Ferranti*, 928 F.Supp. 206, 220.

## VII. SPECIAL ASSESSMENT

A special assessment of $50.00 is imposed. 18 U.S.C. § 3013(a)(2)(A).

## VIII. SUPERVISED RELEASE

 Where imprisonment is imposed for an offense under 18 U.S.C. § 894, a term of supervised release of not more than three years may also be imposed. 18 U.S.C. § 3583(b)(2); U.S.S.G. § 5D1.2(a). The court imposes the maximum 3 year term of supervised release in view of defendant's demonstrated tendency to be violent under the influence of alcohol. He is to receive treatment for alcoholism as directed by Probation.

## IX. CONCLUSION

 The special assessment of $50.00 shall have first priority in payment. *United States v. Ferranti*, 928 F.Supp. 206, 225 (E.D.N.Y.1996); *Thibodo v. United States*, 187 F.2d 249, 257 (9th Cir.1951). Second in priority is restitution, and third is the fine. U.S.S.G. § 5E1.1(c); *United States v. Ferranti*, 928 F.Supp. 206, 225 (E.D.N.Y.1996); *cf. United States v. Ahmad*, 2 F.3d 245 (7th Cir.1993) (priority for victims does not excuse imposition of a fine).

SO ORDERED.